1  **WO**
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT
7                    FOR THE DISTRICT OF ARIZONA
8
   Resource Recovery Corporation,          )   No.  CV-20-00764-PHX-SPL
9                                           )
                           Plaintiff,       )
10                                          )   **ORDER**
   vs.                                      )
11                                          )
                                            )
12 Inductance Energy Corporation, et al.,   )
                                            )
13                         Defendants.      )
                                            )
14 ───────────────────────────────────     )
15 **I.      BACKGROUND**
16         On April 20, 2020, Plaintiff filed a Complaint against Defendants seeking to enforce
17 a "Terms Sheet" (which expressly contemplated, and laid out the terms of, a later Final
18 Settlement Agreement) entered into by the parties following a mediation. (Doc. 1 at 2). The
19 Complaint seeks to enforce the Terms Sheet and alleges that "Defendants have
20 unaccountably repudiated the validity of the agreement and refused to pay." (Doc. 1 at 2).
21         On May 14, 2020, Defendants filed a Motion to Dismiss pursuant to FRCP 12(b)(1),
22 (6), and (7) for "lack of jurisdiction, standing, failure to join required parties, and failure to
23 state a claim." (Doc. 17 at 2). Defendants allege that Plaintiff, Resource Recovery
24 Corporation ("RRC"), did not actually sign the Terms Sheet but that other parties who *did*
25 sign the Terms Sheet (and who are necessary, non-diverse parties) fraudulently assigned
26 their rights to RRC to manufacture diversity jurisdiction. (Doc. 17 at 2). Defendants further
27 assert that the Complaint fails to state a claim for breach of contract because the Terms
28 Sheet is not a binding agreement, but rather a "preliminary option contract" under which

the obligation to pay the contemplated $2.5 million only applies to parties who opted to sign the Final Settlement Agreement ("FSA")—which was never executed. (Doc. 17 at 2-3, 7, 14).  For the following reasons, the Court will deny Defendants' Motion to Dismiss.[1]

## II.   ANALYSIS

### A. Dismissal Under FRCP 12(b)(1) and 12(b)(7)

Defendants first seek to dismiss Plaintiff's action for lack of subject matter jurisdiction, alleging Defendants excluded necessary parties who, if joined, would destroy diversity. (Doc. 17 at 8). Defendants assert these unjoined parties fraudulently assigned their rights in the Terms Sheet to Plaintiff to "avoid incomplete diversity." (Doc. 17 at 8).

#### 1.  Failure to join necessary parties

Defendants allege Plaintiff failed to join "Noelting, MacFarlane, and CWT Canada" (hereinafter the "Unjoined Parties") and that joining them would destroy diversity since they are domiciled in Canada, as are Defendants RDX Technologies and Tony Ker. (Doc. 17 at 8-9). Further, Defendants argue these parties are necessary because, if they are not joined, the Court "cannot afford complete relief or adjudicate which obligations among the parties are owed." (Doc. 17 at 11).

Rule 19 governs compulsory party joinder in federal district courts. The Ninth Circuit has explained that Rule 19 imposes a three-step inquiry: First, is the absent party necessary under FRCP 19(a)? *See Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). If so, is it feasible to order that the absent party be joined? *Id.* If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed? *Id.*

Regarding the first inquiry,  there are two main categories of necessary parties. First, a party is necessary if "in his absence, the court cannot accord complete relief among

---

[1] Defendants' request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision.  *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev*., 933 F.2d 724, 729 (9th Cir. 1991).

existing parties." *Id.*; *see also* Fed. R. Civ. P. 19(a)(1)(A). Second, a party is necessary if he has claimed an interest in the action and either (i) resolving the action in his absence may impair or impede his ability to protect that interest, or (ii) resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest. *Salt River*, 672 F.3d at 1179; *see also* Fed. R. Civ. P. 19(a)(1)(B)(i)-(ii).

Here, Defendants argue that because the Complaint "seeks to compel at [sic] $2.5 million payment and specific performance of several obligations under the [Terms Sheet], and a claim for declaratory judgment demanding judgment declaring that the [Terms Sheet] is a binding and enforceable agreement," the Court cannot afford complete relief unless it has "jurisdiction over all parties to the [Terms Sheet], including [the Unjoined Parties]." (Doc. 17 at 12). Defendants also argue that "the [Unjoined Parties] could also demand duplicitous payment(s) after-the-fact," or, if the Court finds that the Terms Sheet is not itself a binding document, that "the [Unjoined Parties] could attempt to bring another action seeking the same relief and obtain a contrary ruling." (Doc 17. at 12).

Plaintiff argues the Unjoined Parties are not necessary because they "are expressly aware of this suit, yet have expressly disclaimed any claims under the Term Sheet and have not chosen to make any claims here." (Doc. 21 at 10-11). Plaintiff further argues the Unjoined Parties could not bring duplicative litigation, even if they wanted to, because (1) they have disclaimed their interest in the Terms Sheet, (2) they assigned their interest in the Terms Sheet to RRC, and (3) they are co-obligees with RRC so *res judicata* would preclude them from doing so. (Doc. 21 at 11). This Court agrees.

Defendants cite the Ninth Circuit *E.E.O.C. v. Peabody* case for the proposition that "no procedural principle is more deeply embedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). This argument is misplaced, however, because the unjoined party in that case had not assigned away his rights in the contract.

Once a party to a contract has assigned its rights in that contract to another party,

the assignor "need not be joined in an action involving the property assigned because complete relief can be accorded in his absence and, furthermore, he has no interest to protect." *CIT Fin. LLC v. Treon, Aguirre, Newman & Norris PA*, No. CV-14-00800-PHX-JAT, 2015 WL 2412154, at *2 (D. Ariz. May 20, 2015) (internal citations omitted). Generally, an assignor is a necessary party *only* "when the validity of the assignment itself is at issue," or "when there only has been a partial assignment." *Id.* In fact, "in most cases the assignor would not even be a *proper* party inasmuch as the assignor may have lost the right to bring an independent action on the contract by virtue of the assignment." Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1613 (3d ed.) (emphasis added).

Here, the Unjoined Parties have completely assigned their rights in the Terms Sheet to RRC. (*See* Doc. 24 at 3) (explaining that the Unjoined Parties "assigned their interest in [another] judgment to RRC in 2019" and then "assigned their interest in the Term Sheet to RRC in 2020" to "to make enforcement of the Term Sheet more efficient and to consolidate decision-making authority") (internal citations omitted). Furthermore, the validity of the assignment itself is not at issue.[2] Accordingly, the Court finds that the Unjoined Parties have "lost the right to bring an independent action on the contract by virtue of the assignment" are therefore need not be joined as necessary parties under Rule 19. *See* Wright & Miller, at § 1613.[3]

///

///

---

[2] As discussed *infra*, Defendants' only arguments disputing the validity of the assignments (*i.e.*, that it was "done solely to collusively manufacture diversity" and that "CWT did not obtain consent or permission to make any assignment" (Doc. 17 at 11)) are both without merit. *See infra* Section (II)(A)(2); *see also id.* at n.5. Accordingly, the "validity of the assignment" is not "at issue" for the purposes of evaluating whether the Unjoined Parties are necessary under Rule 19.

[3] For this same reason, the Court rejects Defendants argument that failing to join the Unnamed Parties in this action could later result in duplicitous litigation. *See Fed. Realty Inv. Tr. v. Juniper Properties Grp.*, No. CIV. A. 99-3389, 2000 WL 45996, at *4 (E.D. Pa. Jan. 21, 2000) ("When all rights to a claim have been assigned, courts generally have held that an assignor no longer may sue.").

2.  *Diversity*

Because Defendants' argument fails on the first inquiry (*i.e.*, the Unjoined Parties are not necessary parties under Rule 19), the Court need not address the second inquiry (*i.e.*, whether joinder is feasible). But because Defendants allege that the assignment was done fraudulently to manufacture diversity, the Court notes that joining the Unjoined Parties would not, in fact, destroy it. (Doc. 17 at 8) (Defendants arguing that "any assignment violates 28 U.S.C. § 1359, which prohibits such obvious fraudulent assignments to invoke diversity jurisdiction").

Under 28 U.S.C. 1322(a)(3), this Court has diversity jurisdiction over suits between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." *Id*. Defendants assert that the Unjoined Parties, specifically Noelting and CWT Canada, would destroy diversity if joined because they are both Canadian and "both Defendants RDX and Tony Ker are also Canadian citizens." (Doc. 17 at 8).

At the outset, Plaintiff's assertion that "[d]iversity is incomplete where, as here, a plaintiff is a foreign citizen and at least one defendant is also a foreign citizen" paints an incomplete picture. (Doc. 17 at 9-10). This rule only applies where there are not also US citizens on either side of the litigation who have complete diversity themselves. *See, e.g.*, *Transure, Inc. v. Marsh & McLennan, Inc*., 766 F.2d 1297, 1298–99 (9th Cir. 1985) ("[F]ederal diversity jurisdiction is not defeated where (1) there is a legitimate controversy between diverse citizens and aliens are additional parties; and (2) there is complete diversity as to the citizens."). Here, there exists a dispute between a New York plaintiff (RRC) and, in part, Pennsylvania and Arizona defendants. Accordingly, this Court would not be divested of diversity jurisdiction merely because foreign citizens were joined on both sides.

The real issue is whether diversity is destroyed by the presence of a plaintiff and a defendant from the *same* foreign country. The Ninth Circuit has not addressed the issue directly. *See Fischer v. Zespri Fresh Produce N. Am., Inc*., No. 1:07-CV-00610LJO, 2007 WL 2385074, at *7 (E.D. Cal. Aug. 17, 2007); *see also Tango Music, LLC v. DeadQuick*

*Music, Inc.*, 348 F.3d 244, 245 (7th Cir. 2003) (finding that "neither our court nor any other appellate court has decided whether it makes a difference if there are foreigners from the same country on both sides . . . All but one of the district court cases to address the question hold that it makes no difference" and citing district court cases). However, this Court notes that the purpose of diversity jurisdiction is to neutralize any bias that a local court may have in favor of a local resident, an argument which does not extend with any force where there are citizens of the same foreign country on both sides. *See Tango*, 348 F.3d at 245-246. Accordingly, this Court concludes that the presence of Canadian plaintiffs and defendants in this case would not destroy diversity jurisdiction. *See also Karum Holdings LLC v. Lowe's Companies, Inc*., No. 15 C 380, 2017 WL 1151039, at *1 n.2 (N.D. Ill. Mar. 28, 2017), aff'd, 895 F.3d 944 (7th Cir. 2018) ("The fact that the additional parties on each side of the litigation . . . are both citizens of Mexico does not destroy diversity of citizenship").

Because the assignment to RRC did not create diversity that didn't already exist, Defendants argument that the assignment was collusive in violation of 19 U.S.C. § 1359 is without merit. *See Robertson v. GMAC Mortg., LLC*, 702 F. App'x 595, 598 n. 4 (9th Cir. 2017) (finding that the plaintiff's § 1359 argument failed because "[e]ven if BNY were a citizen of Florida . . . complete diversity would still exist relative to Robertson, a citizen of Oregon. Robertson thus cannot show that defendants took any action 'to invoke the jurisdiction' of the district court"); *see also Singer v. Duro*, No. CV08-1304-PHX-DGC, 2009 WL 775109, at *1 (D. Ariz. Mar. 20, 2009) ("In cases involving assignments, . . . section 1359 is violated when the party asserting federal jurisdiction improperly or collusively enters into an assignment solely to *create* diversity jurisdiction.") (emphasis added); *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992) ("Certain kinds of *diversity-creating* assignments warrant particularly close scrutiny.") (emphasis added).

Accordingly, because it would have diversity jurisdiction even without the assignment, the Court concludes that the assignment to RRC was not fraudulent or

otherwise improper.[4]

### 3. RRC's standing

Defendants' last subject matter jurisdiction argument is that Plaintiff does not have standing to enforce the Terms Sheet because it is not a party to it. (Doc. 17 at 8, n.5).[5] Specifically, Defendants argue RRC is not a party to the Terms Sheet because counsel for CWT Parties (which includes RRC) signed the Terms Sheet as "attorney for CWT Parties," rather than "on behalf of CWT Parties." (Doc. 17 at 6-7). Thus, the attorney's signature did not bind RRC, so RRC does not have standing to enforce it. (Doc. 17 at 8 n.5). Plaintiff alleges that the CWT Parties' attorney "was authorized by RRC to execute the Terms Sheet on its behalf and it was RRC's intent that his signature as 'Attorney for the CWT Parties' be binding on it." (Doc. 21 at 7). Thus, because the attorney was given actual authority to bind RRC to the Terms Sheet, RRC has standing to enforce it. (Doc. 21 at 6) ("[T]he Terms Sheet defined the CWT Parties to include . . . RRC. Thus, separate and apart from [the Unjoined Parties], RRC had *its own right* to payment under the Terms Sheet, and it did not need the assignment . . . to bring this suit.") (emphasis added).

The relationship between an attorney and his or her client is governed by agency law principles. *Robertson v. Alling*, 237 Ariz. 345, 348 (2015). "[W]here express authority is given, the attorney may compromise any matter, and his action in so doing is binding upon his principal." *United Liquor Co. v. Stephenson*, 84 Ariz. 1, 3 (1958). "Once a

---

[4] Defendants also argue the assignment is invalid because "CWT did not obtain consent or permission to make any assignment." (Doc. 17 at 11). This, too, is without merit. Unless expressly provided in the agreement, "an obligor's assent is 'not necessary to make an assignment effective.'" *Sogeti USA LLC v. Scariano*, 606 F. Supp. 2d 1080, 1082 (D. Ariz. 2009) (quoting Restatement 2d Contracts § 323 cmt. a.). Nothing in the Terms Sheet prohibited assignment or required Defendants' consent prior thereto.

[5] The Court notes that, because Plaintiff has pled sufficient facts to show that the assignment to RRC was valid, RRC does not need the CWT Parties' attorney's signature to bind it to the Terms Sheet in order to have standing to enforce it. *See, e.g.*, *Egrets Pointe Townhouses Prop. Owners Ass'n, Inc. v. Fairfield Communities, Inc.*, 870 F. Supp. 110, 117 (D.S.C. 1994) ("*Without an assignment*, a nonparty to a contract does not have standing to sue on the contract.") (emphasis added).

7

settlement has been entered into, a presumption is created that the attorney who enters into the settlement agreement had the authority to do so, and the burden to show that there was no consent to the settlement is placed on the person challenging the validity of the agreement." *Scott v. Burns Int'l Sec. Servs., Inc*., 165 F. Supp. 2d 1133, 1140 (D. Haw. 2001) (reversed in part on other grounds). "Where the client cannot affirmatively demonstrate the lack of consent, the settlement will be enforced by the courts." *Id.*; *see also, e.g., Hamilton v. Willms*, 2007 WL 707518, at *9 (E.D. Cal. Mar. 6, 2007) (same).

In his declaration, Bruce MacFarlane, President and sole director of RRC, states that he "expressly authorized [CWT Parties' attorney] to sign the Terms Sheet on behalf of all the CWT Parties, . . . including RRC." (Doc. 24 at 2). MacFarlane further asserts "it was my intent, on behalf of RRC, that [CWT Parties' attorney]'s signature would be binding on RRC." (Doc. 24 at 2). This is sufficient to establishing RRC's standing in this case.[6] There is no meaningful difference between using the language "attorney for" versus "on behalf of" where, as is the case here, the client has given its attorney *actual* authority to bind it to an agreement. Defendants have not met their burden of refuting that no such authority existed or that no consent was given. As such, RRC is a party to the Terms Sheet, and would have standing to bring this suit even without the assignment.

**B. Dismissal Under FRCP 12(b)(6)**

Finally, Defendants move to dismiss for failure to state a claim for breach of contract, arguing that the Terms Sheet is merely an unexercised option contract and is not

---

[6] Defendants point out "there is no allegation *in the Complaint* that [counsel for CWT Parties] signed 'on behalf of' or intended to bind the CWT Parties." (Doc. 17 at 7) (emphasis added). However, "the court may look at outside evidence beyond the complaint . . . to decide the motion to dismiss for lack of jurisdiction." *Gesty v. United States*, 400 F. Supp. 3d 859, 865 (D. Ariz. 2019) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)); *see also Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 14 (D.D.C. 2001) (finding that, in deciding a motion to dismiss for lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint"). Thus, the Court can consider MacFarlane's declaration to conclude, as it does here, that attorney for CWT Parties had actual authority to bind RRC to the Terms Sheet.

itself binding. (Doc. 17 at 13).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Defendants argue that Plaintiff fails to state a claim for breach of contract because "[a]s a matter of law, the [Terms Sheet] is an option contract, which permitted, but did not require, any of the signatories to make the $2.5 million payment, and if that occurred, after the signing of a FSA, the remaining obligations under the [Terms Sheet] would be triggered." (Doc. 17 at 13). Defendants assert that when the Terms Sheet was executed the parties "were unable to agree on who, if anyone, would be responsible for the payment and intentionally left that item without further specificity either to be decided later and incorporated into the FSA or to remain as is with whomever wished to make payment doing so." (Doc. 17 at 14). Thus, because an obligor was not specifically listed, the contract was merely an option contract and "payment was expressly conditioned on the execution of the FSA." (Doc. 17 at 15).

Plaintiff asserts the Term Sheet is not an option contract because, although it does not specify who must pay the $2.5 million, it also does not have any language indicating that payment is conditioned on a later FSA—to the contrary, "the Term Sheet states unequivocally that '[b]y signing this document, the parties agree to be bound by the terms set forth herein.'" (Doc. 21 at 14) (quoting Doc. 1-9 at 3).

The Court concludes that the allegations in the Complaint, taken as true, are

sufficient to establish at this stage that the Terms Sheet is a binding contract and not merely an option contract. It is a fundamental tenant of contract law that "the policy of the law favors enforcement when it is clear that the parties intended themselves to be bound." *AROK Const. Co. v. Indian Const. Servs.*, 174 Ariz. 291, 297, 848 P.2d 870, 876 (Ct. App. 1993). Plaintiff asserts that "while the Term Sheet contemplated that the parties would execute a follow-up settlement agreement that incorporated the terms of the Term Sheet, the parties all agreed that if they could not agree on a mutually acceptable 'final settlement agreement,' the Term Sheet was binding on its own." (Doc. 1 at 2). This is consistent with the language in the Term Sheet itself, which states that that "[b]y signing this document, the parties agree to be bound by the terms set forth herein." (Doc. 1-9 at 3). Plaintiff's Complaint includes sufficient factual allegations that the Terms Sheet is itself binding, at least to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court is further unpersuaded by Defendants argument that the execution of the FSA is a condition precedent to enforcement of the Terms Sheet. To create a condition precedent, "there must be contractual language demonstrating the parties' *unequivocal* intent" to do so. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 182 (App. 1997) (emphasis added). Furthermore, the plain language of the contract "must demonstrate that payment is *only* required upon satisfaction of that condition, and that failure to satisfy the condition precludes any right to payment." *MTR Builders, Inc. v. Jahan Realty Mgmt. Corp.*, No. 1 CA-CV 14-0650, 2016 WL 1425797, at *4 (Ariz. Ct. App. Apr. 12, 2016) (emphasis added) (internal citation omitted). Here, the Terms Sheet merely states "the following terms are agreed upon and will be incorporated within a final settlement agreement" and that "the parties shall provide a final settlement agreement." (Doc. 1-9 at 2). This language does not clearly demonstrate that the terms are not binding *unless* an FSA is executed, but merely indicates the parties' intent to later execute an FSA memorializing the terms. And although the Terms Sheet states that payment is "due sixty (60) days after the signing of the final settlement agreement," this language does not show

1   unequivocally that payment is *only* due *unless and until* an FSA is signed. (Doc. 1-9 at 2).

2   This is particularly true in light of the contrary language in the Terms Sheet indicating the

3   parties' intent to in fact be bound by its terms, even if an FSA is never executed (*i.e.*, that

4   the parties "agree to be bound by the terms set forth herein." (Doc. 1-9 at 3)). Thus, Plaintiff

5   has plead sufficient facts to show that the right to payment was not triggered only by the

6   later execution of an FSA.

7          Finally, Defendants argue that, if the Terms Sheet is not an option contract, then it

8   is unenforceable because "there was no meeting of the minds or agreement on [who was

9   obligated to pay] and the [Terms Sheet] amounted to nothing more than an 'agreement to

10  agree.'" (Doc. 17 at 14). All this demonstrates, however, is that there remains ambiguity

11  on the face of the Terms Sheet as to which Defendants are obligated to pay the $2.5 million.

12  And the presence of such ambiguity precludes dismissal at this stage. *See, e.g.*, *Cappello*

13  *v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1022 (N.D. Cal. 2019) ("Where the terms of a

14  contract are ambiguous, resolution of contractual claims on a motion to dismiss is

15  improper.") (internal citations omitted); *X-Cel Sales LLC v. A.O. Smith Corp.*, No. CV 11-

16  1082-PHX-GMS, 2012 WL 273693, at \*4 (D. Ariz. Jan. 31, 2012) (denying motion to

17  dismiss because "when a contract's terms are indefinite and ambiguous, or if the evidence

18  shows that more than one inference can be drawn . . . or if there is evidence of

19  circumstances and relations outside of the written agreement . . . a question of fact arises

20  which must be determined by the jury") (internal citations omitted). It remains that Plaintiff

21  has plead sufficient facts to show the Terms Sheet is itself a binding contract and not merely

22  an unexercised option contract, at least to preclude dismissal at this time.

23  **III.    CONCLUSION**

24         In sum, the Court finds that the Unjoined Parties (Jean Noelting, Bruce MacFarlane,

25  and CWT Canada II Ltd Partnership) are not required parties under Rule 19 and, therefore,

26  the case can proceed without their joinder. The Court further finds that Plaintiff has

27  standing to enforce the Terms Sheet, both because the CWT Parties' attorney's signature

28  binds it to the agreement and also by virtue of the valid assignment of the Unjoined Parties'

rights. Finally, the Court finds that Plaintiff has plead sufficient facts to show that the Terms Sheet is a binding contract not expressly conditioned on the later execution of a Final Settlement Agreement, at least to survive a motion to dismiss.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 17) is **denied**.

Dated this 20th day of October, 2020.

Honorable Steven P. Logan
United States District Judge